IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| International Brotherhood of Electrical Workers Local No. 150, Patrick Serzynski, and Jeffrey Harger,<br><br>Plaintiffs,<br><br>v.<br><br>Great Lakes Electrical Contractors, Inc. and Richard P. Anderson,<br><br>Defendants. | No. 21 C 5009 |

Memorandum Opinion & Order

Plaintiff International Brotherhood of Electrical Workers Local No. 150 operates a multiemployer pension plan ("the Fund"), for which plaintiffs Patrick Serzynski and Jeffrey Harger serve as trustees. Defendant Great Lakes Electrical Contractors, Inc. ("GLE") was owned by defendant Richard P. Anderson. Through a collective bargaining agreement, GLE was obligated to contribute on behalf of its employees to the Fund. After GLE withdrew from the Fund in June 2018, plaintiffs brought this suit under the Employee Retirement Income Security Act (ERISA). The parties have stipulated that GLE is liable as indicated in the complaint.

Plaintiffs now move for summary judgment on Anderson's personal liability. For the following reasons, the motion is granted.

I.

Anderson was president and owner of GLE as its sole shareholder, sole director, and sole officer. Dkt. No. 43, Exh. A ("Anderson Dec.") ¶ 3; Dkt. No. 36 ("PSMF") ¶ 7. Pursuant to a collective bargaining agreement, GLE was required to make contributions to the Fund on behalf of covered employees. Anderson Dec. ¶¶ 4-5; PSMF ¶¶ 1-2. When the most recent collective bargaining agreement expired on June 3, 2018, GLE ceased to have an obligation to contribute to the Fund. Anderson Dec. ¶ 6; PSMF ¶¶ 3-4. GLE maintained business operations in the same area until it was involuntarily dissolved by the State of Illinois on May 14, 2021. Anderson Dec. ¶¶ 10, 13; PSMF ¶¶ 5-6. Anderson thereafter continued operations as an unincorporated sole proprietorship until September 30, 2021, when he ceased all business.[1] Anderson

---

[1] Anderson states that plaintiffs have failed to show "that Defendant Anderson operated Defendant Great Lakes or that Defendant Anderson operated Great Lakes as a 'sole proprietorship' through September 2021." Dkt. No. 43 at 2-3. However, even viewing the evidence most favorably to Anderson, plaintiffs have offered sufficient evidence on these points. See Dkt. No. 37-3 (showing Anderson was president, sole agent, and sole officer of GLE and that GLE was dissolved on May 14, 2021); Dkt. No. 37-4 ¶¶ 1-3 (showing, in an affidavit signed by Anderson, that Anderson was the "sole shareholder, sole director and sole officer of . . . GLE" and that GLE did not cease business until September 30, 2021, despite being dissolved on May 14, 2021). Anderson's affidavit submitted with his response to this motion confirms that throughout GLE's business operations, which did not cease until September 30,

Dec. ¶¶ 9-10; PSMF ¶ 7. On July 11, 2022, GLE filed an application with the State of Illinois to reinstate its corporate status retroactively to May 14, 2021. Anderson Dec. ¶¶ 14-15.

The Fund determined that GLE experienced a complete withdrawal from the Fund in June 2018 and assessed withdrawal liability in the amount of $263,390. Dkt. No. 37-2; PSMF ¶¶ 8-11. Neither GLE nor any associated business made any payments on this liability when due, so the Fund filed this suit. PSMF ¶¶ 12-16. On July 18, 2022, the parties stipulated that GLE was responsible for the full withdrawal liability assessed by the Fund, plus interest, liquidated damages, and collection costs. Dkt. No. 44. That leaves only the question of Anderson's personal liability.

## II.

Under ERISA, 29 U.S.C. §§ 1001-1371, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), *id.* §§ 1381-1461, an employer who ceases to contribute to a multiemployer pension fund generally incurs withdrawal liability. *See Cent. States, Se. & Sw. Areas Pension Fund v. Ditello*, 974 F.2d 887, 888 (7th Cir. 1992). Employers in the building and construction industry, however, are exempt from withdrawal liability unless, in

---

2021, Anderson was "the [p]resident and owner of GLE as its sole shareholder, sole director and sole officer" and that he held those positions "during all relevant periods related to this litigation." Anderson Dec. ¶¶ 3, 9-10. Anderson offers no evidence to rebut this.

3

addition to ceasing to contribute to the plan, the employer either "(i) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or (ii) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases." 29 U.S.C. § 1383(b)(2).

This statutory scheme treats "all 'trades or businesses' under 'common control' . . . as constituting a single employer for purposes of determining withdrawal liability." *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 876 (7th Cir. 2011) (citing 29 U.S.C. § 1301(b)(1)); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Koder*, 969 F.2d 451, 452 (7th Cir. 1992) (likening this provision to "the corporate law technique of 'piercing the corporate veil'"). Accordingly, a pension plan can recover jointly and severally for withdrawal liability from any trade or business that is part of the common control group. *Cent. States, Se. & Sw. Areas Pension Fund v. CLP Venture LLC*, 760 F.3d 745, 747 (7th Cir. 2014) (citation omitted). The parties do not dispute that GLE or the sole proprietorship each count as a "trade or business," but only whether they were under "common control."

Common control groups can arise in various ways. One of these is when the same five or fewer individuals own a controlling interest in, and are in effective control of, two or more organizations. *See Koder*, 969 F.2d at 454 (citing 26 C.F.R.

4

§ 1.414(c)-2(c)(1)). Anderson wholly owned both GLE and the sole proprietorship, so the two business entities comprise a common control group under this theory. Further, Anderson can be held personally liable if "he holds the entire interest in an unincorporated 'trade or business' under common control with the withdrawing employer." *Cent. States, Se. & Sw. Areas Pension Fund v. Nagy*, 714 F.3d 545, 549 (7th Cir. 2013) (citing 29 U.S.C. § 1301(b)(1); additional citations omitted).

Anderson argues that the common control group can incur withdrawal liability only once: either the first time the group continues covered work (i.e., work in the same jurisdiction for which contributions were previously required), or the first time the group resumes such work, and that the composition of the common control group is frozen at that moment. Because the sole proprietorship did not exist at the time GLE continued covered work after its contract expired on June 3, 2018, Anderson asserts that the sole proprietorship was not part of the common control group at the relevant time. Plaintiffs counter that withdrawal liability can be triggered any time the statutory requirements are met, and that when the sole proprietorship came into existence and continued covered work, it triggered withdrawal liability. This is a question of statutory interpretation, so "[t]he basic rule . . . is that plain statutory language governs." *Nestle Holdings, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 342 F.3d 801, 804–

5

05 (7th Cir. 2003) (citations omitted). Under the plain text of the construction industry exemption, a complete withdrawal occurs if, in addition to ceasing to have an obligation to contribute under the plan, an employer continues to perform covered work or resumes such work within five years after the obligation to contribute to the plan ceases. 29 U.S.C. § 1383(b)(2); *see Laborers' Pension Fund v. W.R. Weis Co.*, 879 F.3d 760, 764 (7th Cir. 2018). If those conditions are met, "[a] withdrawal occurs." 29 U.S.C. § 1383(b)(2).[2]

Anderson points to nothing in the text of the statute suggesting an additional requirement that the composition of a control group for purposes of withdrawal liability be determined only once. Instead, he relies on the Tenth Circuit's decision in *Ceco Concrete Construction, LLC v. Centennial State Carpenters Pension Trust*, 821 F.3d 1250 (10th Cir. 2016). That court considered whether the composition of the control group under the construction industry exemption is determined at the time the obligation to contribute to the fund ceases (i.e., when the collective bargaining agreement expires) or at the time a "complete withdrawal" under § 1383(b)(2) occurs. *Id.* at 1257. Consistent

---

[2] There are other requirements under the construction industry exemption, each of which is met here. *See* 29 U.S.C. § 1383(b)(1). As explained below, I do not credit Anderson's unsupported assertion--which evidence in the record contradicts--that the work performed by the sole proprietorship was not covered work.

6

with the text of § 1383(b)(2), the court held it is the latter, *id.*, but it did not consider whether the makeup of a common control group can be determined at only one point. To the contrary, it noted that § 1301(b)(1)'s definition of "employer" "includes present *and future* compositions of the common-control group." *Id.* at 1259 (emphasis added). It explained:

> The reference to an "employer" in its present or future forms indicates an employer--or, a common-control group --is not static. Put differently, an employer under § 1301(b)(1) is a group of trades or businesses under common control, and its composition can change over time as trades or businesses come in and out of common control. When a trade or business comes under common control, it becomes part of the employer and is treated as such for purposes of the MPPAA. A pension plan can then impose withdrawal liability against the new entity.

*Id.* at 1260-61 (citation omitted).

Adopting Anderson's position would frustrate "almost the entire purpose of the [MPPAA]," which is "to prevent the dissipation of assets required to secure vested pension benefits." *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1374 (7th Cir. 1992). It would incentivize employers who no longer desire to contribute to a pension plan to trigger minimal withdrawal liability through one business before continuing operations under a newly created or acquired business. *See Cent. States, Se. & Sw. Areas Pension Fund v. Johnson*, 991 F.2d 387, 388 (7th Cir. 1993) (finding "main purpose" of § 1301(b)'s definition of "employer" "is to prevent a business subject to an unfulfilled

7

pension debt from 'fractionalizing its operations' or shifting assets to related companies to avoid meeting its financial obligations to the plan"). Furthermore, imposing withdrawal liability on the sole proprietorship in this case does not contravene the MPPAA's aim "to protect the owners of corporations from having to dig into their pockets to make good on the withdrawal liability of their corporations." *Slotky*, 956 F.2d at 1374. Anderson is not liable by virtue of his ownership of GLE alone, nor could he be. *See Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 896 (7th Cir. 2001) ("§ 1301(b)(1) was not intended to impose automatic personal liability on individuals who own companies that are required to contribute to pension funds."). He is only "in danger" because he "own[ed] more than one corporation or other business entity" under common control. *Slotky*, 956 F.2d at 1374.

In short, "the realities of business organization should prevail over the formalities of corporate structure." *Pension Benefit Guar. Corp. v. Anthony Co.*, 537 F. Supp. 1048, 1052 n.6 (N.D. Ill. 1982). In accordance with the text and purpose of the MPPAA, the sole proprietorship became jointly and severally liable with GLE when it continued covered work on May 14, 2021.

### III.

Anderson next contends that any liability that the sole proprietorship may have incurred has been shifted to GLE when it

8

filed for reinstatement of its corporate status on July 11, 2022. Illinois law, through the "relation-back" doctrine, permits a reinstated corporation to ratify actions taken on its behalf while it was dissolved. 805 ILCS 5/12.45(d). Another provision frees shareholders, directors, and officers from personal liability "for the debts and liabilities of the corporation incurred during the period of administrative dissolution by reason of the fact that the corporation was administratively dissolved at the time the debts or liabilities were incurred." 805 ILCS 5/12.45(e).

As the cases cited by Anderson recognize, these provisions apply only to acts taken or liabilities incurred on behalf of the corporation itself. *See* 805 ILCS 5/12.45(d) (providing that, upon reinstatement, acts of the corporation's "shareholders, directors, officers, employees, and agents, *acting or purporting to act in that capacity*" will be ratified (emphasis added)); 805 ILCS 5/12.45(e) (absolving personal liability "for the debts and liabilities *of the corporation*" (emphasis added)); *see also Ind. Harbor Belt R.R. Co. v. United Transp. Grp.*, No. 17-CV-287-TLS, 2022 WL 541229, at *5-6 (N.D. Ind. Feb. 23, 2022) (offering the same analysis for these provisions of Illinois law). They do not "transform individual liability to corporate liability, nor [do they] create a legal fiction contrary to the true nature of events." *Dep't of Revenue v. Semenek*, 551 N.E.2d 314, 315 (Ill. App. Ct. 1990). GLE incurred its liability by continuing covered

9

work in June 2018, but when GLE was dissolved and Anderson continued covered work through his sole proprietorship, the sole proprietorship itself became jointly and severally liable for the withdrawal, as discussed above. Like the defendant in *Indiana Harbor Belt*, who incurred personal liability by continuing the work of a dissolved corporation, Anderson can be held personally liable here, and the relation-back doctrine does not apply.[3]

## IV.

Finally, Anderson argues that summary judgment cannot be granted because there remain three disputed issues of material fact. First, he claims plaintiffs have failed to show that the sole proprietorship engaged in covered work between May 14, 2021 (when GLE was involuntarily dissolved) and September 30, 2021 (when operations ceased). But as plaintiffs correctly point out,

---

[3] It bears noting that GLE filed for reinstatement on July 11, 2022, over nine months after GLE and the sole proprietorship ceased all operations and at the point in this lawsuit when it became clear that GLE was going to stipulate to its own withdrawal liability. Thus, "[i]t is not far-fetched to think this reinstatement was meant to obscure the true nature of events." *Ind. Harbor Belt*, 2022 WL 541229, at *6. Illinois courts have made clear that the relation-back doctrine cannot be used to "substitute worthless corporate liability for valuable personal liability." *Regal Package Liquor, Inc. v. J.R.D., Inc.*, 466 N.E.2d 409, 412 (Ill. App. Ct. 1984) (citation omitted); *see Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr., Inc.*, 752 N.E.2d 33, 40 (Ill. App. Ct. 2001) ("Illinois courts have understood the intent of the legislature to be that . . . parties should not be able to employ these provisions to evade otherwise legitimate debts."). To the extent that happened here, it is an independent reason why the relation-back doctrine does not apply.

Anderson has sworn that "before GLE closed for good"--i.e., September 30, 2021--"it made best efforts to honor existing contracts with its clients and finish outstanding jobs." Anderson Dec. ¶ 9. GLE was an electrical contractor, so its "existing contracts" and "outstanding jobs" would have concerned electrical contracting work. Anderson has also sworn that "GLE maintained business operations until September 30, 2021, when it closed for good and ceased all business." *Id.* ¶ 10. Again, GLE's "business operations" indisputably consisted of covered work, *see* Dkt. No. 44, so maintaining those business operations through September 30, 2021, meets the "covered work" requirement for that period. Anderson offers no evidence in support of his assertion that no covered work occurred during this period, leaving no issue for trial. *See Doxtator v. O'Brien*, 39 F.4th 852, 860 (7th Cir. 2022) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). And I cannot infer that no covered work occurred during that period if all Anderson offers is an unsupported assertion. *See Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022) ("[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation and internal quotation marks omitted)).

The other two purportedly disputed material facts are not facts at all. Anderson argues that plaintiffs' quoted language concerning the requirements "to impose an insolvent organization's liability upon another organization" means that plaintiffs must prove facts about the solvency of GLE and the sole proprietorship. *See Bd. of Trs. of Auto. Mechanics' Loc. No. 701 Union & Indus. Pension Fund v. Moroni*, 905 F. Supp. 2d 846 (N.D. Ill 2012). But these references to solvency are specific to the facts of *Moroni*. Here, plaintiffs need not show anything other than that the sole proprietorship was a "trade or business" under "common control" with GLE, as they have done. Similarly, Anderson frames the dispute over when withdrawal liability was triggered as a factual dispute, but that is a legal dispute and is resolved above. Accordingly, Anderson has not identified any disputed material facts.

V.

For the foregoing reasons, plaintiffs' motion for summary judgment is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 8, 2022